# ORIGINAL

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2007 MAY -9 PM 1: 57

CLERK
SO. DIST. OF GA.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

## SAVANNAH DIVISION

| | |
|---|---|
| SHIRLEY BLACK, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>*Commissioner of Social Security,* )<br>)<br>Defendant. ) | Case No. CV406-78 |

## REPORT AND RECOMMENDATION

Plaintiff has brought this action challenging the Social Security Commissioner's denial of her application for disability insurance benefits. For the reasons that follow, the Court recommends the Commissioner's decision denying benefits be AFFIRMED.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed for disability insurance benefits on March 6, 2003. Tr. at 51-53. Her claim was denied initially and on reconsideration. Tr. at 26-

29, 30-34. Plaintiff requested an administrative hearing, which was held on December 14, 2004 before Administrative Law Judge ("ALJ") L. Ellis Davis. Tr. at 35, 376-414. The ALJ issued a decision denying plaintiff's application for benefits on April 21, 2005. Tr. at 8-19. On January 27, 2006, the Appeals Council denied plaintiff's request for review of that decision, thereby adopting the decision of the ALJ.[1] Tr. at 5-7. Plaintiff then filed the present action for review of the Commissioner's decision, pursuant to 42 U.S.C. § 405(g). Plaintiff has therefore exhausted her administrative remedies, and review under 42 U.S.C. § 405(g) is now appropriate.

## B. Factual and Medical Background

Plaintiff was 47 years old when she allegedly became disabled and is currently 52 years old. Tr. at 51. She completed the ninth grade, obtained her GED, and had military training as a dental assistant and supplies specialist. Tr. at 380-81. She has worked as a dental assistant, material expediter, cook/supervisor, and stock clerk. Tr. at 405-06. She alleges that

---

[1] The Appeals Council considered plaintiff's additional arguments and evidence submitted, but concluded that this information did not provide a basis for altering the ALJ's decision. Tr. at 5-7.

she has not worked regularly since December 20, 2002, when she left her job as a cook/supervisor due to her swollen ankles and inability to stand. Tr. at 383.

### *Medical Evidence Presented to the ALJ*

The medical evidence relevant to plaintiff's alleged disability dates back to March 2002 when plaintiff saw Dr. Amy Cowan complaining of high blood pressure and right leg pain. Tr. at 160. Dr. Cowan concluded that plaintiff had chronic heel pain of uncertain etiology and hypertension. Id. Dr. Cowan continued to treat plaintiff for hypertension and eventually referred plaintiff to Dr. Spector, a podiatrist, to treat her heel pain. Tr. at 158. After discontinuing certain medication for her hypertension, plaintiff expressed a decrease in the swelling of her hands and feet. Tr. at 155. During a visit on September 9, 2002, Dr. Cowan indicated that plaintiff's hypertension was well controlled. Tr. at 151. Plaintiff returned to Dr. Cowan on November 12, 2002 complaining of ankle pain. Tr. at 148. Dr. Cowan prescribed Bextra and recommended that plaintiff continue to wrap her ankles for support. Id. After the Bextra failed to reduce plaintiff's

ankle pain, Dr. Cowan referred plaintiff to an orthopedist.  Tr. at 147.

On April 30, 2002, plaintiff saw Dr. Frederic C. Spector, a podiatrist, for treatment of her heel and leg pain.  Tr. at 144.  Dr. Spector examined her lower extremities and concluded that plaintiff had acute plantar fasciitis in the right foot and was resolving left Achilles tendinitis.  Id.  Dr. Spector recommended hydrotherapy, anti-inflammatory therapy, stretching exercises, and proper footwear.  Tr. at 145.  On May 27, 2002, plaintiff indicated that her left ankle was completely asymptomatic and had benefitted from injection therapy.  Tr. at 143.

Plaintiff saw Sonya Holland, D.O., on July 8, 2002 complaining of swelling, stiffness, and pain in her hands and neck.  Tr. at 153.  Dr. Holland concluded that plaintiff suffered from an arthritic type of joint pain in her hands and neck, similar to osteoarthritis, and hypertension.  Id.

On June 14, 2002, plaintiff met with Mark A. Jenkins, D.O., after feeling a sharp pain in her shoulder while engaging in heavy lifting.  Tr. at 170.  Dr. Jenkins' impression was left rotator cuff tendinitis and mild left bicipital tendinitis.  Id.  After several physical therapy visits, Dr. Jenkins noted that plaintiff had made improvements.  Tr. at 169.  He specifically

noted that her rotator cuff range of motion was full and that she could return to work with no restrictions. Id. During a July 22, 2006 visit, an x-ray of plaintiff's spine demonstrated no arthritis, no joint space narrowing, and no acute fracture. Tr. at 168. Dr. Jenkins prescribed Vioxx and recommended that plaintiff continue her neck and shoulder exercises. Id. On October 25, 2002, plaintiff underwent arthroscopic rotator cuff repair. Tr. at 242-243. During her post-surgery visits, Dr. Jenkins noted that she was making good progress and her pain was down. Tr. at 163-65. On February 27, 2003, Dr. Jenkins noted that her shoulder strength and range of motion had returned, there was no swelling, and she could return to her normal activities. Tr. at 163.

On December 11, 2002, plaintiff met with Dr. Juha I. Jaakkola, an orthopedist, complaining of bilateral ankle pain. Tr. at 312-314. After reviewing plaintiff's medical history and symptoms, Dr. Jaakkola's impression was bilateral posterior tibial tendinitis. Tr. at 314. An MRI taken on December 31, 2002 showed tenosynovitis of the posterior tibial tendons bilaterally. Tr. at 311. Dr. Jaakkola prescribed Prednisone and continued to treat plaintiff with Cam walkers. Id. On January 20, 2003

plaintiff said she was "75% better." Tr. at 310. On February 3, 2003, plaintiff's ankle swelling had significantly reduced and she claimed to be feeling better after taking medication prescribed by Dr. Morley. Tr. at 309. Dr. Jaakkola recommended orthotics and physical therapy to help plaintiff regain her ankle strength. Id. Plaintiff continued to see Dr. Jaakkola for treatment of her ankle pain. See Tr. at 303-314, 339-340, 374-375.

Due to her ankle, shoulder, and hand pain complaints, plaintiff began treatment at Savannah Rheumatolgy Associates in January 2003. Tr. at 262. At that time, Dr. John Morley opined that plaintiff would require two to six months of therapy before she could return to work as a line cook. Tr. at 263. He also prescribed Prednisone, which he indicated "may help allow her to return to work." Id. Dr. Morley conducted a whole body scan on March 17, 2003, which revealed findings consistent with arthritic disease of the ankles, right knee, and right thumb. Tr. at 234. Dr. Morley continued to treat plaintiff's rheumatoid arthritis, and during a November 21, 2003 visit, he noted that her inflammatory arthropathy seemed to be in remission. Tr. at 255. Dr. Morley also noted that she had no dramatic arthritis and had a full and symmetrical range of motion in her C-spine. Id.

Dr. Morley reduced her Methotrexate dosage after noting that "she seem[ed] to be doing so well." Id. During a review of plaintiff's functionality on December 1, 2003, however, Dr. Morley stated that plaintiff suffered from limited mobility of her hands and feet, could not stand for more than two hours a day, should avoid carrying more than five pounds, and should avoid repetitive hand motions. Tr. at 253.

On January 27, 2003, plaintiff saw Dr. David Gaskin for treatment of her rheumatoid arthritis, hypertension, and epistaxis. Tr. at 276. On July 8, 2003, Dr. David Gaskin completed a mental impairment questionnaire, in which he diagnosed plaintiff with mild depression, but indicated that her mental status was normal in all categories. Tr. at 171-73. On December 10, 2003, Dr. Gaskin diagnosed plaintiff with rheumatoid arthritis, fibromyalgia, hypertension, and depression. Tr. at 266.

On March 10, 2003, plaintiff was seen by Dr. Judith Porter for dyspnea resulting in complaints of fatigue and shortness of breath with exertion. Tr. at 194. On examination, Dr. Porter concluded that plaintiff had a normal airflow with only mild decreased diffusion capacity. Tr. at 196. A sleep study conducted on September 15, 2003, however, revealed

moderately severe obstructive sleep apnea and Dr. Porter suggested treatment with a nasal C-PAP machine. Tr. at 190.

During a psychological evaluation for the Social Security Administration by Dr. Jeffrey Vidic on July 8, 2003, plaintiff complained of low energy and depression. Tr. at 188. Dr. Vidic evaluated plaintiff's mental impairments and determined that plaintiff had no restriction of her daily living activities, mild difficulties maintaining concentration, persistence, or pace, and no episodes of decompensation. Tr. at 184. Dr. Vidic concluded that plaintiff's mental impairment was not severe. Tr. at 174. He further concluded that plaintiff's statements regarding her limitations and symptoms were not supported by the evidence and, therefore, were only partially credible. Tr. at 188. On February 14, 2004, Dr. Donald Hinnant, a state agency psychologist consultant, reviewed the medical evidence of record and concurred with the Dr. Vidic's assessment. See Tr. at 174.

On February 14, 2004, Dr. Olatunji Awe, a state agency medical consultant, conducted a residual functional capacity assessment. Tr. at 279-286. Dr. Awe determined that plaintiff could lift and carry 50 pounds

occasionally and 25 pounds frequently; could stand and walk for six hours out of an eight-hour workday; could sit for six hours out of an eight-hour workday; could frequently climb ramps and stairs; could occasionally climb ladders, ropes, or scaffolds; and could frequently lift overhead with her left extremity. Tr. at 280-82. Dr. Awe also concluded that plaintiff had no visual, communicative, or environmental limitations. Tr. at 282-83.

### Medical Evidence Submitted to Appeals Council

Before the Appeals Council, plaintiff submitted additional evidence. First, she submitted medical records from Memorial Health University Medical Center dated between December 16, 2003 and May 16, 2005. Tr. at 338-372. Plaintiff also submitted medical records from the Southeastern Orthopedic Center dated between March 14, 2005 and May 10, 2005. Tr. at 374-375. These records refer to her continuing treatment by Dr. Jaakkola for ankle pain. Id. On March 14, 2005, x-rays showed mild degenerative changes in her knees, but nothing severe. Tr. at 375. During a visit with Dr. Jaakkola on May 10, 2005, plaintiff complained of some swelling in her feet and indicated that she wanted to proceed with surgery

to reduce her ankle pain. Tr. at 374. On May 16, 2005, Dr. Jaakkola performed a left foot calcaneal osteotomy with posterior tendon reconstruction. Tr. at 343.

### *Testimony Before the ALJ*

On December 14, 2004, the ALJ held a hearing and heard testimony from plaintiff and James Waddington, a vocational expert. Tr. at 378-414. Plaintiff testified that it had been since December 2002 when she last worked to earn money. Tr. at 382. When questioned about her responsibilities at home, plaintiff testified that she washes dishes, prepares food, does laundry twice a week, sweeps, and makes the beds with the help of her son. Tr. at 384-88. Plaintiff testified that she drives to the store three times a week and also drives to pick up her daughter from school. Tr. at 385-86. Plaintiff testified that she shops for groceries approximately once a month, and loads but does not push the cart. Tr. at 388. She testified that she bathes and dresses herself and combs her own hair. Tr. at 386. She contended that she does not do any gardening or yard work and has no hobbies. Tr. at 389. Plaintiff testified that she does not visit with

friends, but that she does attend church on Sunday and Monday each week and periodically attends movies with her daughter. Id. Plaintiff also testified that she owns a dog, which she feeds. Tr. at 390.

Plaintiff testified that her most serious work impairment was the pain in her ankles and her rheumatoid arthritis. Tr. at 390. She alleged that the pain in her ankles prevented her from standing for longer than ten or fifteen minutes. Tr. at 391. She testified that her rheumatologist told her to limit her walking and standing and that her podiatrist recommended exercises to help her ankles. Tr. at 383-84. Plaintiff also complained of pain in her hips, shoulder, thumb, and lower back. Tr. at 391-92 She alleged that due to the pain in her lower back, she was unable to sit for an extended period of time. Tr. at 392. Plaintiff testified that certain medication caused blurred vision and drowsiness. Tr. at 393, 395. She also testified that she suffered from fibromyalgia, which resulted in a "confusion state" at least two to three times a day. Tr. at 396.

On examination by her attorney, plaintiff testified that Dr. Morley and Dr. Jaakkola believed that she was unable to return to work. Tr. at 398-99. Plaintiff testified as to the effects of her fibromyalgia, claiming that

on "bad days" she did not do anything. Tr. at 400. Plaintiff further alleged

that she had approximately two to three "bad days" a week due to the

fibromyalgia. Tr. at 401. Plaintiff testified that her rheumatologist advised

her to avoid using a broom or mop because it caused pain in her arms and

lower back. Id. She also testified that on a daily basis she was limited by

tiredness, shortness of breath, and depression. Tr. at 402-03.

The ALJ also heard testimony from a vocational expert (VE). Tr. at

404-408. After establishing that a 50 year-old female with plaintiff's work

history had little transferrable skills, the ALJ posed the following

hypothetical:

> Assume that I find, on the credible evidence before me,
> that the [plaintiff's] demonstrated exertional impairments,
> which reflect the residual functional capacity for a wide range
> of medium work on a sustained basis. I'd like you to further
> assume that she's demonstrated certain significant non-
> exertional impairments, principally relating to postural
> restrictions, which would preclude her from working requiring
> more than occasional climbing, stooping, and crouching.
> Further assume that because of limitations with respect to
> [plaintiff's] . . . right hand, that she is precluded from working
> requiring more than occasional reaching and handling.
> . . .
> taking into full account these non-exertional restrictions, and
> this [plaintiff's] age, education, and prior work experience, are
> there jobs existing in the general area where this [plaintiff]
> lives, or in the several regions of this country, that she could

perform?

Tr. at 406-07.

The VE suggested that the non-exertional limitations would rule out most medium jobs but listed several light or sedentary level jobs, including appointment clerk, information clerk, night watch person, and parking lot cashier. Tr. at 407-08. Plaintiff's attorney then posed a different hypothetical to the VE, asking him to suppose that plaintiff was limited to sedentary, unskilled activities and only occasional use of her right hand. Tr. at 409-10. The VE responded that under those circumstances, plaintiff could perform the work of a surveillance system monitor. Tr. at 410. Plaintiff's attorney then added to his hypothetical, asking the VE to suppose that along with the above limitations, plaintiff had to miss two to three days of work each week. Tr. at 411-12. The VE testified that under those circumstances, "such a person would not be able to sustain employment." Tr. at 412.

### *The ALJ's Final Decision*

The ALJ assessed the credibility of plaintiff's subjective pain

complaints, indicating that her complaints were not "fully credible" and were "inconsistent with her testimony that she cooks, shops, washes dishes, mops, and does laundry." Tr. at 15. The ALJ also noted that her pain complaints were also unsupported by the objective medical evidence. Id. The ALJ, therefore, discounted the description of her physical limitations. Id. He specifically referenced that the x-rays of her cervical spine had shown no arthritis, that her rotator cuff injury had healed, and that Dr. Morley had concluded that her inflammatory arthropathy seemed to be in remission. Id.

In the ALJ's final determination, he outlined his conclusions as to the plaintiff's residual functional capacity. Based on plaintiff's subjective complaints and the objective medical findings, the ALJ determined that while she was unable to perform any of her past relevant work, she was capable of performing a significant range of light work as defined in 20 C.F.R. § 404.1567. Tr. at 16. The ALJ sought assistance from a VE due to plaintiff's additional exertional and non-exertional limitations. The VE determined that given plaintiff's additional limitations, she could work as an appointment clerk, information clerk, night watch person, and parking

lot cashier. Tr. at 17. The ALJ did not accept the two hypothetical situations posed by plaintiff's attorney because, according to the ALJ, the evidence of record did not support the conclusion that plaintiff would be limited to sedentary work or that she would have to miss two days of work each week. Id. Thus, the ALJ determined that plaintiff was not under a disability as defined in the Social Security Act. Id.; see 20 C.F.R. § 404.1520(g). Id.


## II.    STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits pursuant to sentence four of 42 U.S.C. § 405(g) is limited. The reviewing court may not decide the facts anew, re-weigh the evidence, or substitute its judgment for that of the ALJ. Barron v. Sullivan, 924 F.2d 227, 229-30 (11th Cir. 1991); Arnold v. Heckler, 732 F.2d 881, 883 (11th Cir. 1984). Even if the weight of the evidence is contrary to the ALJ's determination, the Court must affirm the administrative decision if there is substantial evidence in the record to support it. Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Barron, 924 F.2d at 230; Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). Nonetheless, this standard does not relieve the Court of its duty to scrutinize carefully the entire record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983); Walden, 672 F.2d at 838.

The presumption of validity afforded to the ALJ's findings of fact, however, does not apply to his conclusions of law. Martin, 894 F.2d at 1529; Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). Failure to apply correct legal standards or to provide the Court with a basis to determine whether correct legal standards were applied constitutes grounds for reversal. Martin, 894 F.2d at 1529; Wiggins, 679 F.2d at 1389.

## III. ANALYSIS

Plaintiff raises four issues in her request for review: (1) whether the ALJ ignored evidence of plaintiff's physical impairments; (2) whether the ALJ improperly rejected plaintiff's ankle pain; (3) whether the ALJ improperly rejected testimony from plaintiff's treating physician; and (4) whether the ALJ improperly relied on testimony from the VE.

## A.    Consideration of Plaintiff's Impairments

Plaintiff argues that the ALJ ignored evidence of her impairments due to tendonitis, fibromayalgia, and sleep apnea. Doc. 10. She contends that the ALJ failed to provide an explanation supporting his determination that these impairments were not severe. Id.

The Commissioner has adopted a five-step analysis for evaluation of disability claims. 20 C.F.R. § 404.1520. At step one, the Commissioner must inquire whether the plaintiff was employed during the period of the alleged disability. If the plaintiff held substantial gainful employment during the time of the alleged disability, the Commissioner must deny benefits. At step two, the Commissioner must determine whether the plaintiff suffers from a severe impairment. Upon conclusion that the plaintiff's impairment is severe, the Commissioner must determine whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1. A finding that the impairment meets or equals a listed impairment conclusively establishes disability (step three). If the impairment, though severe, does not meet or equal a listed impairment, the Commissioner must review the plaintiff's residual functional capacity and the physical and mental demands of past work (step four). If the plaintiff

can still perform past work, the Commissioner will find that the plaintiff is not disabled. If, on the other hand, the Commissioner finds that the plaintiff cannot perform past work, he must then determine whether the plaintiff, based on age, education, and past experience, can perform other work (step five).

In this case, the ALJ found that plaintiff satisfied step one because there was no evidence that she had engaged in substantial gainful activity after December 20, 2002, the date of the alleged onset of disability. Tr. at 12. With regard to step two, the ALJ concluded that plaintiff had severe impairments with respect to her rheumatoid arthritis and osteoporosis, but that her tendinitis, fibromyalgia, sleep apnea, acid reflux, and hypertension were not severe impairments. Tr. at 14. The ALJ also concluded that plaintiff's depression was not a severe impairment. Id. A severe impairment is one which significantly limits an individual's ability to do basic work activities, and impairments having only a minimal effect on basic work activities are not considered severe. 20 C.F.R. §404.1520(c).

Plaintiff alleges that the ALJ failed to fully consider the severity of plaintiff's tendonitis, fibromayalgia, and sleep apnea. Doc. 10. She contends that the "consequence of neglecting these impairments is that the

finding that [plaintiff] can stand and walk all day is unsupported." Id. The ALJ did not credit plaintiff's allegations regarding the limitations allegedly caused by the above-mentioned conditions. Tr. at 15. Specifically, the ALJ explained that plaintiff's testimony regarding her daily activities were not consistent with the level of fatigue allegedly caused by her diagnosis of sleep apnea and ankle pain. Id. In discrediting plaintiff's subjective allegations, the ALJ considered a number of factors including the lack of objective medical evidence to support her alleged symptoms or complaints, the inconsistent opinions of Dr. Morley, her treating physician, and the expert opinions of the state consultants. Id. The ALJ, therefore, concluded that plaintiff's tendinitis, fibromyalgia, and sleep apnea did not cause any significant functional limitations. Tr. at 14.

A review of the record indicates that plaintiff's treating physicians made an effort to manage her fibromyalgia and sleep apnea with medication. At no time did any physician, either treating or consultative, state that plaintiff's fibromyalgia or sleep apnea prevented her from working or rendered her totally disabled. Moreover, while the ALJ determined that plaintiff's tendinitis was not a severe impairment, he did consider plaintiff's ankle pain when making his residual functional capacity

assessment, and he ultimately reduced her work capacity from medium to light. Id.

Plaintiff also appears to be unsatisfied with the ALJ's discussion of her medical record. Doc. 10. Plaintiff alleges that because the ALJ omitted certain medical evidence from his written decision, he failed to fully consider all of her impairments. Id. "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as . . . it is not a broad rejection." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). While the ALJ did not specifically reference every piece of medical evidence, his decision was not a broad rejection of plaintiff's alleged impairments. The ALJ's decision indicates that he sufficiently reviewed plaintiff's medical records and subjective pain complaints. The ALJ did in fact take into account that plaintiff suffered from tendonitis, fibromyalgia, and sleep apnea. He reasonably determined, however, that these impairments did not impose significant limitations on plaintiff's ability to perform basic work activities. Upon a review of the evidence, the Court agrees that substantial evidence supports the determination made by the ALJ. Plaintiff's allegations under this ground, therefore, are without merit.

## B.    Consideration of Plaintiff's Subjective Pain Complaints

Plaintiff argues that the ALJ erred by failing to properly consider her ankle pain complaints, which according to plaintiff are well supported by objective medical evidence.  Doc. 10.  Plaintiff also contends that the ALJ failed to mention a statement from her daughter relating to plaintiff's allegations of physical limitation and pain.[2]  Id.  The Eleventh Circuit has determined that:

> a three part 'pain' standard applies when a claimant attempts to establish through his or her own testimony of pain or other subjective symptoms.  The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence to confirm the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.  The standard also applies to complaints of subjective conditions other than pain.

Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citations omitted); Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  If plaintiff has a medically determinable ailment that can reasonably be expected to

---

[2] While plaintiff alleges that the ALJ failed to consider a statement made by her daughter, she cites to a function report completed by Sandra McDowell, plaintiff's friend and neighbor.  See Tr. at 86-92.  The Court is unable to locate any statement made by plaintiff's daughter.

produce the symptoms alleged, the Commissioner must evaluate the intensity and persistence of the symptoms to determine to what extent the symptoms limit the plaintiff's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). In reaching a conclusion regarding a claimant's disability, the ALJ considers "all of the evidence presented, including information about [plaintiff's] prior work record, [plaintiff's] statements about [plaintiff's] symptoms, evidence submitted by [plaintiff's] treating or nontreating source, and observations by [Social Security Administration] employees and other persons." 20 C.F.R. § 404.1529(c)(3).

It is reversible error, however, if complaints of subjective pain are disregarded simply because they are not supported by objective clinical and laboratory findings. Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). The ALJ "must necessarily review the medical evidence and make a credibility determination in assessing the claimant's disability on the basis of pain." Id. at 624. If the ALJ decides not to credit a claimant's subjective testimony, he must discredit it explicitly and articulate his reasons for doing so. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991).

Here, the ALJ determined that plaintiff's subjective complaints were not credible for the following reasons:

The medical evidence indicates that [plaintiff] has rheumatoid arthritis; and osteoporosis, impairments that are 'severe' within the meaning of the Regulations, but not 'severe' enough to meet or medically equal . . . one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

The medical evidence also establishes that the [plaintiff] has tendinitis, fibromyalgia, sleep apnea, acid reflux, and hypertension . . . which would not impose significant limitations on her ability to function and therefore are not considered to be severe impairments.

. . .

[plaintiff] alleges that her ability to work is limited due to her ankles; being tired; feeling bad; and depression. The [plaintiff's] allegations are inconsistent with her testimony that she cooks, shops, washes dishes, mops, and does laundry. Also there is a lack of objective evidence to support her alleged subjective symptoms/complaints.

Tr. at 14-15.

The ALJ, therefore, found that the medical evidence supported a finding of an underlying medical condition, satisfying the first prong of the pain standard. Tr. at 14. The ALJ concluded, however, that plaintiff did not meet the second or third prong of the pain standard. See Tr. at 15. Plaintiff's subjective descriptions of symptoms and pain were not corroborated by the medical evidence of record, and, more importantly, were contradicted by her own testimony regarding her daily activities. Plaintiff alleges that ankle swelling and pain forced her to terminate her

employment as a cook/supervisor. Tr. at 383. At the hearing, however, she testified that she washes dishes, prepares simple foods, sweeps the kitchen floor, drives to the grocery store and to her daughter's school, shops for groceries, does laundry, and takes care of a dog. Tr. at 384-390. While these daily activities alone do not establish that plaintiff is physically able to work, evidence that plaintiff can perform such activities does effect the credibility of her subjective pain complaints.

The ALJ further reviewed plaintiff's subjective complaints of physical pain in light of the objective medical evidence garnered from treating and consulting doctors and concluded that the degree of plaintiff's asserted ankle pain did not correspond to the evidence of physical injury. Tr. at 15. He specifically noted that Dr. Morley indicated that plaintiff's arthropathy seemed to be in remission. Id. Furthermore, it appears from Dr. Morley's notes that plaintiff's ankle swelling was occasional, and on May 9, 2003, her ankles did not "appear to be appreciably swollen." Tr. at 259. On November 21, 2003, Dr. Morley stated that plaintiff was doing well, and he reduced the dosage of her medication. Tr. at 255. The medical treatment notes from Dr. Jaakkola reveal intermittent complaints of ankle pain but do not suggest a disabling condition. See Tr. at 303-314. The ALJ also

noted that Dr. Awe concluded that plaintiff could perform medium work, which includes occasionally climbing ladders, ropes, or scaffolds. Tr. at 15. The ALJ, however, reduced plaintiff's residual functional capacity to light work due to evidence of plaintiff's arthritis in her ankles. Id. The ALJ, therefore, did in fact take into account plaintiff's ankle pain when making his final determination regarding plaintiff's residual functional capacity. While her ankle pain did effect her work capacity, her own testimony and the objective medical evidence did not comport with her allegations of disabling ankle pain.

The Court finds that the ALJ properly considered plaintiff's subjective complaints of ankle pain in light of the objective medical evidence, as required under Holt. The Court further finds that the ALJ properly made a credibility determination regarding the subjective complaints of pain and adequately articulated his rationale for discrediting plaintiff's testimony. Accordingly, the ALJ's determination was based on substantial evidence and was a correct application of the law.

## C. ALJ's Decision to Discredit Treating Physician's Opinion

Plaintiff alleges that the ALJ improperly rejected the opinion of

plaintiff's treating physician, Dr. Morley. Doc. 10. Plaintiff also alleges that the ALJ failed to consider opinions from plaintiff's other treating physicians. Id.

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)) (citations omitted). If an ALJ rejects a treating physician's opinion, he "may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Id. (quoting Plummer, 186 F.3d 429). It is equally clear, however, that "[t]he treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); accord Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987). Further, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with

other substantial evidence, it should be accorded significantly less weight."

Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

During plaintiff's initial visit with Dr. Morley on January 28, 2003, his impression was tenosynovits, tendinitis, possible arthritis of the ankles, and possible right thumb joint arthropathy. Tr. at 262. Dr. Morley concluded that plaintiff would require at least two to six months of physical therapy before she could return to work. Tr. at 263. Plaintiff continued to see Dr. Morley for treatment of her rheumatoid arthritis during 2003. See Tr. at 254-63. During a follow-up visit on November 21, 2003, Dr. Morley concluded that plaintiff also suffered from fibromyalgia and sleep disturbance. Tr. at 255. Plaintiff claims that the ALJ omitted specific impairments cited by Dr. Morley, which support Dr. Morley's opinion regarding plaintiff's limitations. Doc. 10.

The ALJ clearly explained that Dr. Morley's opinions regarding the limitations caused by plaintiff's severe impairments were unsupported by his own medical records and were inconsistent with other medical evidence in the record. Tr. at 15. Specifically, the ALJ noted that:

> When Dr. Morley saw the [plaintiff] on November 21, 2003, his impression was that her inflammatory arthropathy seemed to be in remission; however, in his functional capacity assessment

> he indicated that the [plaintiff] could not stand for greater than
> 2 hours per day; needed to avoid carrying more than 5 pounds;
> and needed to avoid repetitive hand motions. Dr. Morley's
> findings do not support these limitations. Accordingly, the
> undersigned discounts this opinion and gives it no evidentiary
> weight.

Id. Furthermore, the ALJ gave greater credence to the assessment of Dr.

Awe, which contradicted Dr. Morley's opinion. Id. The ALJ explained that

unlike the opinion of Dr. Morley, that of Dr. Awe was consistent with the

evidence of record when viewed in its entirety. Id. The Court finds that the

ALJ properly considered all the relevant evidence. Furthermore, there is

no evidence that the ALJ discounted Dr. Morley's opinions due to his own

credibility judgments, speculation, or lay opinion; rather he did so on the

basis of contradictory medical evidence from Dr. Awe and the overall lack

of lack of objective medical support for Dr. Morley's opinions. The plaintiff,

therefore, has failed to demonstrate any error in the ALJ's decision to

discount Dr. Morley's assessments.

Plaintiff also alleges that the ALJ failed to evaluate the opinions of

Dr. Amy Cowan and Dr. Juha J. Jaakkola. Doc. 10. The record indicates

that Dr. Cowan treated plaintiff from March 2002 until December 2002.

Tr. at 147-148, 155-160. While Dr. Cowan's records do reflect plaintiff's

complaints of ankle and heel pain, Dr. Cowan focused on treating plaintiff's hypertension. See id. According to the treatment notes from September 9, 2002, plaintiff's hypertension was well controlled and Dr. Cowan eventually referred plaintiff to an orthopedist for her ankle pain. Tr. at 147, 151. The record also indicates that Dr. Jaakkola treated plaintiff's tendinitis from December 2002 until May 2005. Tr. at 303-314, 339-340, 374-375. Dr. Jaakkola's treatment notes reflect that plaintiff continued to experience occasional tenderness and pain in her ankles, eventually leading him to recommend tendon surgery. See Tr. at 303-314, 339-340, 374-375.

Plaintiff alleges that Dr. Jaakkola and Dr. Cowan concluded that plaintiff had difficulty walking due to ankle pain. Doc. 10. She also contends that Dr. Jaakkola recommended that plaintiff should not return to work due to such pain. Id. While Dr. Jaakkola did recommend that plaintiff not return to work, his recommendation was for the short-term, only until plaintiff could meet with Dr. Morley. Tr. at 311. While the ALJ did not specifically mention either physician by name, he noted that plaintiff had tendinitis and hypertension and considered both of these impairments in assessing her residual functional capacity. See Tr. at 15. The ALJ, therefore, did not ignore the opinions of Dr. Cowan and Dr.

Jaakkola. His decision indicates that he reviewed the medical record as a whole, including the assessments made by Dr. Cowan and Dr. Jaakkola, in arriving at his conclusion that neither her tendinitis nor hypertension were severe impairments. Plaintiff's allegations of errors on this ground, therefore, are without merit.

### D. Plaintiff's Limitations and Residual Functional Capacity

Plaintiff argues that the definition of jobs listed by the VE, as they appear in the Dictionary of Occupational Titles ("DOT"), are inconsistent with the plaintiff's residual functional capacity. Doc. 10. Specifically, plaintiff contends that the DOT defines each of the jobs listed as requiring "frequent reaching and frequent handling," which exceed the ALJ's residual functional capacity determination. Id.

Here, the ALJ determined that plaintiff "retains the residual functional capacity to perform light work with no more than occasional climbing, stooping, crouching; and no more than occasional reaching and handling *with the right arm*." Tr. at 15 (emphasis added). Furthermore, the hypothetical presented to the VE included limitations of the right arm and hand only. See Tr. at 406-407. The VE then took into consideration

plaintiff's limitations of her right arm and hand when making his determination regarding her possible job opportunities. See id. The jobs listed by the VE, therefore, are not inconsistent with the plaintiff's residual functional capacity, as plaintiff could still perform frequent reaching and handling with her left arm and hand.

Furthermore, even if there were a conflict between the VE's testimony and the DOT, a remand would not be warranted. Plaintiff claims that if the VE's testimony is in conflict with the description of the relevant jobs in the DOT, such testimony does not constitute substantial evidence. Doc. 10. When the ALJ presents a hypothetical to the VE based on the medical evidence in the record, the VE's opinion expressed in answering that hypothetical constitutes substantial evidence for the ALJ to issue a finding consistent with the VE's testimony. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). The Eleventh Circuit has also held that "when the vocational expert's testimony conflicts with the DOT, the vocational expert's testimony 'trumps' the DOT." Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999).

The ALJ posed a hypothetical to the VE based on the medical evidence in the record and based on plaintiff's additional exertional and non-

exertional limitations. The ALJ then relied on the VE's opinion in making his final decision. The VE's opinion, therefore, constitutes substantial evidence in this case, and the Court may not re-weigh the evidence, regardless of any alleged conflict. Accordingly, this claim is without merit.

## III. CONCLUSION

Based on the foregoing, the decision of the Commissioner should be AFFIRMED.

**SO REPORTED AND RECOMMENDED this** 9TH **day of May, 2007.**

**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**